May it please the court. Elizabeth Fisher for appellant Tagatac. I guess it's not Mr. Ross, huh? I filed an appearance. That's fine. The district court order allowing forced administration of anti-psychotic drugs to let me just start and ask you this. Apparently at this point my understanding is that Mr. Tagatac has been sentenced and released. And so why is the appeal moot at this point? The appeal is not moot for two reasons. Even if he were not in has he's violated he's violated his conditions of supervised release and he is in custody and has been since December for quite some time awaiting a position at a halfway house. We argue, however, that even if he Well, we would have to be capable of repetition yet evading review, I guess. Yes. But if he were to be involuntarily medicated again it would really depend on the circumstances of how he was at that time. And so how would It's not going to be the same thing. Our argument is that the I mean it could happen again but it's going to be different circumstances. Yes. To this particular defendant, perhaps. What we're saying is that the forcible medication order was improper and no matter what happened to him, whether he was completely cured, didn't violate supervised release, or and, you know, finished his 10 month sentence and went home, this would still not be moot because obtaining an order for forcible medication without reference to legal authority is a situation that's easily capable of repetition in this district. And if we're allowed to evade review in this case, would likely to happen to other defendants. Pardon me. I didn't understand. Is he in custody now? Yes. And it has been for how long? I believe December or January. If there were an order for forcible medication at this time, as Judge Callahan indicates, there would have to be a showing at this time that he is in need of forcible medication. Circumstances would be different from the last time, would they not? The circumstances would be different. But I'm afraid that since the approach of the government and the court appeared to be you just show the facts that he's disorganized or he needs evaluation and without any reliance on statutory or legal authority, you just say these facts allow us to justify this order of forcible medication without taking into account his interest in avoiding forcible medication. We're arguing that facts alone cannot justify such treatment. And without a direction from the court in this case saying that the medication order was improperly obtained, because it had no legal basis, that this thing will happen again to him and most likely to other defendants. You know, I don't think that you can raise the exception to the mootness for capable of petitioning and debating a review because the same thing might happen to somebody else. I think you're limited to saying it's likely to happen to you, to this particular defendant or appellant or whatever the position is applying to this particular party. I don't think you can raise it with respect to certain parties. You'd have to have some sort of notion of eustachianism or the right to raise rights of certain parties. That's very limited in our law. If that is the case, then. But your position is that he is in custody now and that any minute he might be apt to act up again and be forced to say medication. And let's play that out. Let's say, in fact, that is the case, that even as we speak now, he's acting up and then the process. What would happen? There are. Play it out for us. This appeared to be a relatively simple case when we first got involved. But it's taken very many. I can talk about what should have been done. Why don't you answer with just because I ask you, let's pretend that he starts acting up now. What does need to be necessary before they plug him with the medicine? What we want to argue. Well, what we argue is, do you think would be necessary? Yes. The government will have to. He has violated his supervised release. He won't take his medications voluntarily. That is the problem. If the government wants to have him forcibly medicated, they will have to present the court with some legal reason to do it. And according to my reading of the statutes, 4241 and 4244 both apply to defendants who are pre-sentencing. Those who haven't been sentenced yet. Now, he has been sentenced. And the original problem with him was he was sent to be medicated in a prison setting rather than a hospital setting. 4241 allowed him to be sent to Springfield for an evaluation to determine his competency at the beginning. And that was what Springfield believed that they were doing, was determining his competency. During the time he was at Springfield, he became increasingly agitated. So his condition worsened because he was in a prison setting rather than in a hospital situation as he would have been if 4144 had been applied. And I think you've gone completely spun off into a tangent. The question I asked and the question I'd really like you to answer. Okay. And just focus on the question. Don't presuppose what I'm going to ask. Okay. Just clear your mind. Listen to the question. Assuming he acts up today, what would happen? What would be – what in your view? You're saying this is capable of repetition in evading review. Prove it to me by telling me what would happen if he acted up today that would evade review. So what happens next? He has just acted up. He's just acted up. Okay. He's in custody. The government wants to medicate him. I would – what I would do and the government would do would be probably two different things. They would probably order – What do you think will happen? They want to medicate him. In the narrative, you know, just explain to me what this process is that is going to repeat itself that we can't – that he will be incapable of review. So you tell me, you know, he's just acted up. The government wants to medicate him. What happens next? On page 18 of the government's – I don't want to look at the brief. I want you to tell me. The government says – I want you to tell me. Tell me what happens. What is this event that is not – that is likely to repeat itself and evade review? The government says that it would be in a position where it would again seek to impose forcible medication. All right. It would go to court. It would – Okay. The district court here in Hawaii. Yes. It would present. It would give you notice. It would give notice and – And it would file a supporting affidavit. It might even call a witness. You'd be able to revoke the affidavit. But – What's missing in the review there? What's missing in the review here, as was what was missing in the prior review, was that the facts of his condition alone don't justify overriding his liberty interest. There's no statute – no statute was cited. The district court would say, you're wrong, Ms. Fisher. We do find the condition to be such as requires medication. And then you would have review by district court. But the statute – You don't like the result, but you get the review. That's not entirely correct. We believe that without the legal basis, the facts themselves are – the facts don't authorize anything. It's your position that there's not enough time between the district court making a decision and the appellate court getting the case for an appellate review? Is that what you're saying? Escaping appellate review? Escaping – There was no legal basis for the forcible medication order because no – none was cited. It was facts only. You can't really weigh the competing interests and say, well, his – what justifies overriding his interest if you don't have the particular statute that tells you. We understand that's your substance claim. We're trying to figure out whether or not you could get us reviewed. And what you have fair to tell me is how in this proposed process, let's say this repeated itself, why you would not be able to get review by the district court and then come here and get review of that order here? Why this isn't perfectly – if this were to repeat itself, why this wouldn't be a perfectly plausible way of getting the matter reviewed in appeal? Well, because if – if the government, again, cites strictly facts without a legal basis and they can't use – Let's assume it would do exactly the same thing as it did the last time. Then – Let's assume the district court does exactly the same thing it did the last time. Then we would argue as we have here – Why don't you then have an appeal? You come up here. And we say that it's arbitrary and – And you get a review. And then you've had a review. Well, we have a review, but then the government would argue that that was moot because – It only becomes – it only becomes moot because the last time he got released and he was no – he was no longer under, you know, he wasn't involuntarily being medicated. That's what made it become moot. But there's no guarantee – Right now he's not being medicated, right? The next time he'll be – they won't continue the medication for the – for long enough to have an appeal. There's nothing inherent about the medicating process that says it'll stop before an appeal can be taken. That's one of the problems with this particular defendant. He, you know, was charged with misdemeanors. The time that he was going to be in prison was relatively short. In fact, he was in Springfield for a year when his sentence would have been 10 months. So that's what we're saying is capable of repetition, not necessarily to this person, but to others. Because if, you know, you can – getting forcibly medicated and getting him out of the system without putting him into a hospital setting, as is contemplated by 42 to the fourth, then it's just a kind of a revolving door based on particular facts without any reference to real standing. Thank you. We'll hear from the government. Good afternoon. May it please the Court. I'm Dave Norton, Special Assistant United States Attorney on behalf of the United States. At this point, are there any specific questions that Your Honors would have for myself? He is back in custody, right? Yes, Your Honor. He is in custody, and I can answer the question that you posed to Ms. Fisher as far as what the process of this might be. And let me just first, before going there, explain factually where he is. He's in custody right at this very moment. He has admitted to violations of supervised release, but his supervised release has not been revoked. He's essentially waiting for bed space at a dual diagnosis treatment center where the court's indicated that he's going to go as soon as the space arises. Now, should the extent, should something happen to the extent where he engages in conduct either right now or once he gets to the dual diagnosis center, the government might seek to revoke his supervised release. Then at that point in time, again, he'd be in a prison setting as he is in. I'm sorry, I'm not understanding. If he, if supervised release has not been revoked, by what authority is he in custody? He was arrested pursuant to an arrest warrant. For another crime? For the supervised release violation. And as the court has continued hearings on that. So he's being held on suspicion of violating his supervised release? Yes, Your Honor. But he's admitted it. He's admitted to it, and the government has expressed a willingness to, in lieu of revoking him and sentencing him to a term of imprisonment, have him sent out to a dual diagnosis treatment center. The only caveat being that he remains in confinement until that bed space is available. So his supervised release at this point has not been revoked. It's a form of plea bargain. Yes, Your Honor. Okay, I understand. What is the authority for the district court's original order? Your Honor, the authority was pursuant to the Supreme Court decision in Washington v. Harper, where the court held that the government could involuntarily medicate. They had a statute. Your Honor, if I may. There was a statute in Harper. Actually, Your Honor, there wasn't a statute in Harper. What there was was an internal special offender program policy in place that the doctors at the treatment center looked to in terms of ordering medication. Okay. What's the equivalent authority here? The equivalent authority here is the Harper case itself, which cites the specific standards under which the government may forcibly administer medication to a prison inmate, those being, one, if he's dangerous to himself or others, and, two, if the medication is in the inmate's medical interest. And in this case, the case … Well, no, I mean, it can do it consistent with due process, but it can't simply grab the authority to do it out of thin air. I mean, what Harper said is, provided you have authority to do it, here's what due process requires. But it doesn't say that you can just do it, that you can invent authority. Harper itself doesn't create authority. Harper talks about how authority is exercised once it exists. There's nothing in Harper that says a district court, just out of thin air, can grab somebody off the street and medicate them. Your Honor, I don't believe that that's what we're doing as far as grabbing someone out of thin air and medicating them. Tagatek was at the treatment facility in Springfield. He was shown to be very dangerous. He barricaded him in a closet. He was forcibly extricated with CO2. I know the record. I understand the circumstances. The question is, okay, you've got that. You still need authority. You still need something authorizing the administration of medicine on a forced basis. And I just didn't see it on the record. I don't know what it is. There is a regulation that allows medication under different circumstances, but... Are you talking about cell?  What specifically are you talking about, Your Honor? Well, what are you talking about? What regulation are you talking about? What authority are you talking about? Your Honor, I mentioned I wasn't the prosecutor at that point in time. But I don't read Harper, and I don't read any cases that come after Harper, citing that we need statutory authority. The fact that the court in Harper... Well, that's how things work. You need authority to do stuff. Harper talks about what you do, how you exercise authority, so it's consistent with due process. There's all sorts of grants of authority you have. The Constitution says you've got to exercise them in a particular way. But you still need a grant of authority. You need authorization to do this. I believe the authority would have been case-law driven, Your Honor, based on Harper setting the standards as far as a court determination of dangerousness in medical interest. I see you're shaking your head. No, I agree with Judge Kuczynski. Harper simply says where there is authority, it does not violate due process. I'm bothered by something else. This gentleman, what he did was throw a brick through a sliding glass door and he vandalized two cars in a naval housing area for which he got 10 months as a misdemeanor. He became obstructive in jail. If you had administratively segregated, as they say, this gentleman, he kept him there for 10 months. He'd be out on the street now. We're now in 2005 and he's not at liberty. Doesn't that bother you? Well, Your Honor. And you just you say you're doing it for his own good. Well, Your Honor, I believe Magistrate Curran actually addressed this issue. And he said that given Taggart's mental condition at that time, I believe he considered that it would have been irresponsible, considering the fact that he was mentally ill and dangerous to have tag attack, then return back to society without first obtaining the treatment that he would need for his psychological. But if he were dangerously mentally ill, wouldn't you have to go under some health and welfare procedure to have a 72 hour? I'm thinking about California, 72 hour detention and then proved by a couple of doctors, et cetera. All of which is protective of his due process here. He's coming in for a misdemeanor and you medicate him against as well. And you keep him there for longer than the prison term. And it looks like you're keeping him there indefinitely. We're not keeping him there indefinitely. I mean, once he regained competency by virtue of taking the medication, he was then returned back to Hawaii for sentencing to be imposed. And at the time of sentencing, he was given time served. And I'll note that right now he is voluntarily taking his medication. When you say regain competency, is there a statute that says that you suspend proceedings pending a person being competent to participate in the proceedings? I believe under the 4200 series, Your Honor, though I can't point to the specific statute for you. I apologize. Well, when you say competency, is that what you're talking about? He couldn't participate in the proceedings? Are you talking about dangerousness and what are you talking about? As far as how he got to Springfield to begin with, there was concern that he needed treatment from the folks over at the Federal Detention Center. So an order was prepared to send him out to Springfield. At that point in time, a review was done. And thereafter, he was committed for restoration of competency purposes because the medical review revealed that at that point in time he was not competent. So at the time that forcible medication was administered in this case, Tagitech was present at Springfield for competency purposes. Well, I guess are you proceeding under some statutory scheme that says that when people aren't competent, then you have to get them treatment and restore their competency so that they can participate in the legal proceedings? Well, I believe the 4241 says that, that that's the case, Your Honor. Well, Judge Kaczynski was asking you what statute are you proceeding under. What are you doing? I think it's two different distinctions. I mean, one statute is how he gets to Springfield to begin with. That would be the 4240 series of statutes. And then as far as whether or not forcible medication was to be authorized, the prosecution and the court based forcible medication on the Harper factors, which were, again, a court finding of dangerousness and medical interest. And I'll note that. But Harper provides no authority. I mean, you have regulation. You have 28 U.S.C. 54943, which was the regulation itself. But it clearly doesn't provide authority. I mean, in fact, what you have is a regulation that says exactly, provides a procedure that you have to use, which is you have a hearing in front of a psychiatrist, which wasn't done in this case. And that's how you go about doing it. So the government doesn't use the applicable procedure, instead goes into the district court and then the district judge to order it. But how can you do this when you've got a procedure that specifically deals with this, a regulation that specifically deals with this situation? I can answer that. Is the cell court essentially said that the termination needs to come from the district court in Harper? There were the court was involved in application of this very procedure. There was a regulation. There was authority there. They use this procedure. Right. Yes, Your Honor. OK. So why are you signing? Because cell cites Harper as being the test of the first. If you have a source of authority and if you do it right, what happened to the cell is they had authority, they used it, and then you apply the Harper factors to see whether they used it in a way that's consistent with the process. The big difference between this case and cell and Harper is they had a procedure here. They didn't use it. They did not use the procedure. And why on earth would they, you know, you've got a 28 CFR 549.43. Why wasn't that used? I can't say for sure. But it wasn't used. It wasn't used. It was not used. OK. And this is what this says. When an inmate will not account to a voluntary written informed consent for psychotropic medication, the inmate will be scheduled for an administrative hearing. It explains why. So it says specifically what happened to the situation. And it didn't happen. But, Your Honor, to the extent that there was a. . . I mean, is the government in the business of sort of ignoring some of the regulations? Certainly not, Your Honor. Can the district court take it upon itself to say, oh, agent, you know, you don't have to comply with the law? No, Your Honor. Well, better hope the case is moved. OK. I don't remember if you have any time left. Would you like to take 30 seconds or a minute for rebuttal? I believe in this case, if the court and the government had realized that they had to choose a statutory authority, a good choice would have been 4244, under which a tag attack could have been put in a hospital setting instead of in a penal setting specifically to address his, you know, after. . . First of all, after a hearing to determine his mental capabilities. But after that was done, rather than leave him to the tender mercies of the prison system, put him into a hospital setting where his medication decisions were being made by medical practitioners instead of prison personnel. OK. Thank you very much. The case is argued. We'll stand for a minute. We are adjourned. All rise.
judges: Kozinski, Callahan, Bea